UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Case No. 17-27132 (KCF) |
|  | Chapter 11 |
| Successful Asset Management, LLC, |  |
|  | The Honorable Chief Judge Kathryn C. Ferguson |
| Debtor. |  |
|  | Hearing Date: May 30, 2018 at 2:00 p.m. |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE FIRST AMENDED SMALL BUSINESS DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT**

The Acting United States Trustee (the "U.S. Trustee"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), hereby asserts this objection ("Objection") to the *First Amended Small Business Debtor's Combined Plan of Reorganization and Disclosure Statement* ("First Amended Plan & Disclosure Statement") (Docket No. 73), and in support of the Objection, respectfully represents as follows:

**BACKGROUND**

1. On August 23, 2017 ("Petition Date"), Successful Asset Management, LLC ("Debtor"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. *See* Docket No. 1. This is a small business case.

2. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On Schedule A/B, the Debtor disclosed its interest in 45 pieces of real property. *See* Docket No. 1. The Debtor did not disclose any other interest in real or personal property. *See id*.

4. On Schedule D, as originally filed and as amended, the Debtor identified Queen Equities, LLC as a secured creditor with a blanket lien on all of the real property and a claim in the amount of $750,000. *See* Docket Nos. 1 and 48. The date the debt was incurred is disclosed as November 15, 2016. *See* Docket Nos. 1 and 48.

5. On February 22, 2018, the Court entered an *Order Converting Case to Chapter 7*. *See* Docket No. 31.

6. On February 27, 2018, Barry R. Sharer was appointed the chapter 7 trustee. *See* Docket No. 34.

7. On February 28, 2018, the Debtor, through then proposed substitute counsel, filed a *Motion for Order (i) Granting Reconsideration of Order Converting Case Pursuant to Federal Rule 59(e) or, in the Alternative, Recovering Chapter 7 Case to Chapter 11 Pursuant to 11 U.S.C. § 706; and (ii) Allowing Debtor's Monthly Association fees to be Held in Escrow Pending Audit of Management Company* ("Motion to Reconsider"). *See* Docket No. 40.

*8.* On March 8, 2018, the Debtor filed Amended Schedules. *See* Docket No. 48. This includes an amended Statement of Financial Affairs. *See id*. In response to Part 1, Item 4 "payment or other transfers of property made within 1 year before filing this case that benefited any insider," the Debtor discloses eight transactions: (i) the transfer of 26 E Crystal Lake Ave, Haddon, NJ to 26 E Crystal LLC, an entity "owned by relative of debtor's principal" on July 19,

2017, total value $135,000; (ii) the transfer of 35 Old Main Shore Barnegat, NJ to 35 Old Main Shore LLC, an entity "owned by relative of debtor's principal" on June 1, 2017, total value $207,000; (iii) the transfer of 1095 Voorhees Ave., Hillside, NJ to 1095 Voorhees LLC, an entity "owned by relative of debtor's principal" on July 10, 2017, total value $137,500; (iv) the transfer of 3502 Arborwood, Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on July 19, 2017, total value $34,100; (v) the transfer of 2608 Arborwood, Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on May 8, 2017, total value $14,000; (vi) the transfer of 1710 Arborwood, Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on July 12, 2017, total value $14,000; (vii) the transfer of 2915 Arborwood, Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on July 12, 2017, total value $22,000; and (viii) the transfer of 2411 Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on July 12, 2017, total value $14,000. *See id.*

9. On March 28, 2018, the Court entered an *Order Converting Chapter 7 Case to Chapter 11 Pursuant to 11 U.S.C. § 706*. *See* Docket No. 57.

10. On May 4, 2018, the Debtor filed the First Amended Plan & Disclosure Statement, which is the subject of this Objection. *See* Docket No. 73.

11. On May 9, 2018, the Court entered an *Order Conditionally Approving Disclosure Statement, Fixing Time for Filing Acceptances or Rejections of the Plan, and Fixing the Time for Filing Objections to the Disclosure Statement and to the Confirmation of the Plan, Combined with Notice Thereof and of the Hearing on Final Approval of the Disclosure Statement and Hearing on Confirmation of the Plan*. *See* Docket No. 77.

12. The Plan & Disclosure Statement provides, in relevant part, that: (A) the Plan is a reorganization; (B) the Debtor will fund the plan from rental income and new value contributions

from its sole shareholder[1]; (C) the Debtor "does not intend to pursue preference, fraudulent conveyance, or other avoidance actions"; (D) all administrative claims will be paid in full on the Effective Date or according to separate written agreement; (E) the Effective Date is "the first day of the month following thirty (30) days after the day on which the Confirmation Order becomes a Final Order[2]; (F) the priority claims of the Internal Revenue Service will be paid in "[m]onthly payments of $120, at 4%, over fifty-two (52) months"; (G) the secured claim of Queen Equities will be paid pursuant to "30 years amortization at 4.5% = 5 year note (monthly payment of $3,800); (H) the secured claim of Arborwood I will be paid pursuant to "30 years amortization at 4.5% = 5 year note (monthly payment of $200)"; (I) the secured claim of Arborwood II will be paid pursuant to "30 years amortization at 4.5% = 5 year note (monthly payment of $495)"; (J) the secured claim of Arborwood III will be paid pursuant to "30 years amortization at 4.5% = 5 year note (monthly payment of $363)"; (K) unsecured creditors are impaired and will receive "3% dividend"; and (L) the equity interest holder (Kevin Gestetner) is unimpaired and will retain his "100% equity." *See* Docket No. 73.

13. The First Amended Plan & Disclosure Statement includes very few details regarding the means for implementing the plan. However, Exhibit D to the First Amended Plan & Disclosure Statement discloses the following: (i) the Debtor anticipates rental income of $315,000/year; (ii) the Debtor will also anticipates rental income of $51,600/year from "properties per Statement of Financial Affairs – Part 1, Item 4"; and (iii) the Debtor will receive new value

---

[1] This information is included in Exhibit D and not seen elsewhere in the First Amended Plan & Disclosure Statement.

[2] D.N.J. LBR 3020-1 provides that the effective date of a chapter 11 plan is 30 days after entry of the confirmation order, unless the confirmation order provides otherwise. The comment to this rule states the default effective date was changed from "when the order of confirmation becomes final" to its current form "to provide a definitive effective date." The provision as written in the First Amended Plan & Disclosure Statement does not provide a definitive effective date.

from the Debtor's principal, $2,000 in year 1, $42,000 in year 2 and $21,000 in year 3. *See* Docket No. 73, Exhibit D.

14. Exhibit D also discloses: (i) the Debtor has post-petition arrearages on real estate taxes in the amount of $66,300; (ii) the Debtor has post-petition arrearages on water/sewer obligations in the amount of $20,000; (iii) the Debtor will make disbursements on account of "Real Estate Taxes on properties per Statement of Financial Affairs – Part 2, Item 4"; (iv) unsecured creditors will not receive a distribution until year 3; (v) contrary to statements in Article 2.2.A., Queen Equities will receive $1,870/month at interest rate of 2.99%; and (vi) contrary to statements in Article 2.1.B., the IRS will receive monthly payments of $100 over sixty months. *See id.*

15. The Liquidation Analysis includes a shaded portion that is difficult to read. *See* Docket No. 73, Exhibit C. The Liquidation Analysis does not account for any potential avoidance actions that the Debtor, or a trustee, may be able to commence on behalf of the estate. *See id.*

16. Article 5, Discharge, appears to be cutoff. *See* Docket No. 73, Article 5.

17. The most recent Monthly Operating Report ("MOR") filed by the Debtor is for February 2018. *See* Docket No. 56. The Debtor discloses that it is not paying its bills on time, nor is it paying post-petition real estate taxes. *See id.* Attached to the MOR is a rent roll identifying 45 properties. *See id.* In February 2018, there 21 properties for which the amount of rent paid is $0. *See id.* The total rent collected for the month is $18,057. *See id.* Over 12 months, this would equate to $216,684.

18. The Debtor is delinquent in filing its March 2018 and April 2018 MORs.

## LEGAL ANALYSIS

19. Pursuant to 11 U.S.C. § 586, the U.S. Trustee is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be

heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*), 33 F.2d 294, 295-96 (3d Cir. 1994) (nothing that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

**<u>Adequacy of the Disclosure Statement</u>**

20. Pursuant to Section 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" to allow parties to make an informed judgment about a plan of reorganization or liquidation. Section 1125(a)(1) defines "adequate information" as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

See 11 U.S.C. § 1125.

21. Full disclosure is a fundamental policy in the reorganization process. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1980), *cert. denied*, 109 S. Ct. 495 (1988) ("[W]e cannot overemphasize the Debtor's obligation to provide sufficient data to satisfy the code standard of 'adequate information.'"); s*ee also In re Crowthers McCall Pattern,*

*Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("Given the necessity for adequate information in the Disclosure Statement and the paramount position Section 1125 occupies in the Chapter 11 process, there is little, if any, room for harmless error.").

22. In addition, courts have held that were a proposed plan is not confirmable on its face, it will not approve a disclosure statement with respect to that plan because to do so would be an exercise in futility. *See In re Market Square Inn, Inc.*, 163 B.R. 64, 68 (Bankr. W.D. Pa. 1994); *In re Washington Associates*, 141 B.R. 275 (Bankr. S.D.N.Y. 1992); *In re Eastern Marine Electric Co-op, Inc.*, 125 B.R. 392 (Bankr. D. Me. 1991); and *In re McCall*, 44 B.R. 242, 243 (Bankr. E.D. Pa. 1984).

23. When assessed against the standards outlined above, the First Amended Plan & Disclosure Statement is inadequate because the information provided is not clear or complete enough for a hypothetical investor to make an informed judgment about the proposed plan and, at times, is contradictory.

24. As set forth above, the First Amended Plan & Disclosure Statement itself includes little to no information regarding funding of the plan. Under Article 2.5, Means for Implementing the Plan, the Debtor did not state how it would fund the plan. Further, under Article 3, Feasibility, the Debtor references Exhibit B to show cash on hand – that document shows cash on hand of $74,390, but this figure is not supported by documentation to show the Debtor actually has that cash. The most recently filed MOR shows only $32,072.67 in cash.

25. The most recently filed MOR also shows that the Debtor has 45 rental units but in February 2018, twenty-one of the units paid $0. The total rent collected in February 2018 is disclosed as $18,057. Over twelve months this is $216,684. Yet, Exhibit D to the First Amended Plan & Disclosure Statement estimates that in Year 1 the Debtor will collect $315,000 in rent.

There is no information available to determine if the Debtor's receipt of rental income has improved since February 2018 or what steps if any the Debtor is taking or will take to collect rent from non-paying tenants and/or lease vacant units.

26. Exhibit D also conflicts with information in the First Amended Plan & Disclosure Statement (in particular the monthly payment to creditors) and raises additional questions, including the source of rental income from '"properties per Statement of Financial Affairs – Party 2, Item 4" and new value from Kevin Gestetner. There is no explanation regarding these other sources of funding.

27. The treatment of general unsecured creditors is also unclear. The Debtor does not state the total amount of unsecured claims or when claimants will receive any distributions.

28. Accordingly, the information provided is not adequate.

**<u>Confirmation of the Plan</u>**

29. Confirmation of a chapter 11 plan requires that the Debtor meet all the requirements of Section 1129(a). *See Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000).

    **A. Feasibility – 11 U.S.C. § 1129(a)(11)**

30. Section 1129(a)(11) requires a debtor to demonstrate the plan is feasible. *See generally*, 11 U.S.C. § 1129(a)(11). The standard of proof required by a debtor to prove a chapter 11 plan's feasibility is by a preponderance of the evidence. *See In re Rubicon US REIT, Inc.*, 434 B.R. 168, 174 (Bankr. D. Del. 2010); *In re Trans Max Tech., Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006). The debtor must present evidence to sufficiently demonstrate that a plan has a reasonable chance of succeeding. *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226. The debtor has to

establish concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under a proposed plan. See Trans Max Tech., Inc., 349 B.R. at 92.

31. In addition, the Court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success. *See Greate Bay Hotel & Casino, Inc.,* 251 B.R. at 226.

32. "The purpose of § 1129(a)(11) 'is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the debtor could possibly attain after confirmation.'" *See In re Sound Radio, Inc*., 103 B.R. 521, 522 (D.N.J. 1989), *aff'd sub nom Appeal of Robinson*, 908 F.2d 964 (3d Cir. 1990) (citation omitted).

33. The facts and circumstances of this case demonstrate that the proposed plan is not feasible on its face and, as a result, may fail to qualify for confirmation.

34. Again, the most recently filed MOR shows that the total rent collected in February 2018 is $18,057. Over twelve months this is $216,684. The plan depends on the Debtor collecting $315,000/year in rent. The Debtor did not provide sufficient proof to show that it can make up this $100,000 shortfall. There is also insufficient proof regarding other sources of funding, including rental income from properties that are not currently owned by the Debtor and "new value" contributions from the Debtor's principal.

35. As the First Amended Plan & Disclosure Statement does not comply with Section 1129(a)(11), confirmation should be denied.

**B. Payments within 5 Years of the Order for Relief – 11 U.S.C. § 1129(a)(9)(C)**

36. Pursuant to 11 U.S.C. § 1129(a)(9)(C), the Debtor must pay claims arising under Section 507(a)(8) in full (with interest) within five years of the "order for relief," i.e., the Petition Date. The Debtor's proposal is that upon confirmation the Debtor will pay the IRS over 52 months.

37. The Debtor filed this case on August 23, 2017. Accordingly, the Debtor must pay the IRS claim in full by August 23, 2022. Under the plan proposal, even if plan payments begin on June 1, 2018, the last payment, 52 months later, would be made on September 1, 2022.

38. As the First Amended Plan & Disclosure Statement does not comply with Section 1129(a)(9(C), confirmation should be denied.

### C. Best Interest Test – 11 U.S.C. § 1129(a)(7)

39. Section 1129(a)(7) requires that each impaired class of claims receives as much as it would under a chapter 7 liquidation. To satisfy this test, the Debtor must provide a liquidation analysis. Here, although the Debtor provided a liquidation analysis, it does not take into account any potential avoidance actions that the Debtor, or a trustee, may be able to commence on behalf of the estate. This is relevant in light of the information in the amended Statement of Financial affairs disclosing the transfer of real property to potential insiders in the one year prior to the Petition Date.

40. As the First Amended Plan & Disclosure Statement does not comply with Section 1129(a)(7), confirmation should be denied.

### D. Absolute Priority Rule – 11 U.S.C. § 1129(a)(8)

41. Section 1129(a)(8) requires that each class of claims either be unimpaired or vote[3] to accept the plan. Section 1129(b)(1) provides an exception to Section 1129(a)(8) if the plan does not discriminate unfairly, is fair and equitable and meets all other requirements under Section 1129(a). Fair and equitable is defined by Section 1129(b)(2), including that no junior interest can receive property until all senior interests are paid in full. 11 U.S.C. § 1129(b)(2)(B)(ii). These connected statutory provisions are commonly referred to as "the absolute priority rule." *See In re*

---

[3] There is no voting information available at this time.

*Armstrong World Indus., Inc.*, 432 F.3d 507, 511-12 (3d Cir. 2005). Under this rule, "a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1998), *quoting In re Ahlers*, 794 F. 2d 388, 401 (8th Cir. 1986).

42. There is an exception to the absolute priority rule called "the new value exception," which "allows existing equity holders to retain (i.e., buy back) their ownership interests in the reorganized debtor over the objection of any senior dissenting unsecured creditor class that is not being paid in full if the equity holders make a new capital contribution to the debtor that meets certain criteria." *In re Haskell Dawes, Inc.*, 199 B.R. 867, 871 (Bankr. E.D. Pa. 1996).

43. The criteria requires a capital contribution that is: (1) "in the form of money or money's worth"; (2) "necessary to the reorganization"; (3) "reasonably equivalent to the value of the interest being retained"; (4) up front"; and (5) "substantial." *Haskell Dawes*, 199 B.R. at 872 (citations omitted). The plan proponent has the burden of proof. *Id*. Further, "'[a] rigorous showing as to these requirements is necessary in order to ensure that a debtor's equity holders do not eviscerate the absolute priority rule by means of contrived infusion.'" *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 301 (D.N.J. 1996), *quoting In re Tallahassee Assocs., L.P.* 132 B.R. 712, 717 (Bankr. W.D. Pa. 1991).

44. The First Amended Plan & Disclosure Statement indicates non-priority general unsecured creditors will only receive a 3% dividend and that Kevin Gestetner is not impaired and will retain 100% equity. There is no mention of a "new value" contribution except for in Exhibit D, where one line item shows Gestetner will contribute $2,000 in year 1, $42,000 in year 2, and $21,000 in year 3.

11

45. Arguably, the Debtor would satisfy the first criteria as the contribution is in the form of money. The Debtor also, arguably, would satisfy the second criteria as it does not appear that rental income alone can fund the plan. As to the third and fifth criteria – that the contribution be reasonably equivalent to the value of the interest being retained and substantial – there is simply not enough information provided by the Debtor to consider these elements.

46. What is clear, however, is that the Debtor does not satisfy the fourth criteria: that the payment is upfront. For purposes of the new value exception, the capital contribution "must be a present contribution, taking place at or before the effective date of the plan, not a contribution in the future." *In re Torgo Atlantic City, LLC*, 2009 WL 1288367, * 16 (Bankr. D.N.J. May 7, 2009) (Burns, J.), *quoting In re Sovereign Group*, 142 B.R. 702, 709 (E.D. Pa. 1992). The timing "is essential so that it may be liquidated by the creditors should the reorganization effort fail." *In re Torgo Atlantic City, LLC*, 2009 WL 1288367 at *16, *quoting Sovereign Group*, 142 B.R. at 709. The Debtor's proposal (buried in an exhibit) clearly fails to satisfy the "upfront" criteria. There is also no proof of Gestetner's ability to make these payments.

47. As the First Amended Plan and Disclosure Statement violates the absolute priority rule, and does not satisfy the new value exception, confirmation should be denied.

**E. Failure to Propose a Plan in Good Faith – 11 U.S.C. § 1129(a)(3)**

48. Pursuant to 11 U.S.C. § 1129(a)(3), the court shall only confirm a plan if "[t]he plan has been proposed in good faith and not be any means forbidden by law."

49. The Debtor's largest secured creditor is Queen Equities, LLC. The Debtor identifies Queen Equities, LLC as holding a blanket mortgage on all of the Debtor's real property with a claim in the amount of $750,000. The Debtor incurred this obligation on November 16, 2016, less than one year prior to the Petition Date.

50. There is no information in the Debtor's schedules or Statement of Financial Affairs that discloses the receipt and disposition of the $750,000. There is no indication that such funds were used for the purchase of real property as the majority of the real property was purchased prior to November 16, 2018. There is no indication that that such funds were used to pay off a secured creditor. The no indication that the Debtor is holding these funds as Schedule A/B does not identify any bank accounts or cash on hand.

51. Further, Queen Equities, LLC, was a Debtor in its own bankruptcy case at the time November 16, 2016 transaction. *See* Case No. 16-30814 (KCF). There is nothing on the docket for the bankruptcy case of Queen Equities, LLC indicating Queen Equities, LLC, had $750,000 to lend, or that Queen Equities, LLC, had permission to transfer such funds. *See id*.

52. Accordingly, the extent and validity of secured claim of Queen Equities, LLC is unclear and has not been addressed by the Debtor.

53. As the Debtor has not established that the First Amended Plan & Disclosure Statement was proposed in good faith, confirmation should be denied.

**F. Failure to Comply with Applicable Provisions – 11 U.S.C. § 1129(a)(2)**

54. Pursuant to 11 U.S.C. § 1129(a)(2), the court shall only confirm a plan if "[t]he proponent of the plan complies with the applicable provisions of this title."

55. Pursuant to 11 U.S.C. §§ 704(7) and (8), made applicable in chapter 11 cases by 11 U.S.C. §§ 1106(a)(1) and 1107(a) and Fed. R. Bankr. P. 2015, a debtor is required to supply certain reports concerning the estate's administration and the operation of the debtor's post-petition business as prescribed by the *United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Case*.

56. As of the date of this Objection, the Debtor failed to file its March 2018 and April 2018 MORs.

57. If the reports are outstanding at the hearing, confirmation should be denied.

58. There are other deficiencies, including the Debtor's failure to pay post-petition taxes and failure to file returns. The U.S. Trustee intends to address these deficiencies by filing a Motion to Convert or Dismiss pursuant to Section 1112.

## **CONCLUSION**

WHEREFORE, it is respectfully submitted that the Court disapprove the First Amended Plan & Disclosure Statement and grant such other relief as the Court deems just and proper.

Respectfully submitted,

ANDREW R. VARA
ACTING UNITED STATES TRUSTEE
REGION 3

By: */s/ Lauren Bielskie*
    Lauren Bielskie
    Trial Attorney

Dated: May 23, 2018