UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | : Case No. 17-27132 (KCF) |
|  | : |
|  | : Chapter 11 |
| Successful Asset Management, LLC, | : |
|  | : The Honorable Chief Judge Kathryn C. Ferguson |
| Debtor. | : |
|  | : Hearing Date: October 25, 2018 at 2:00 p.m. |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE THIRD AMENDED SMALL BUSINESS DEBTOR'S COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT**

The Acting United States Trustee (the "U.S. Trustee"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), hereby asserts this objection ("Objection") to the *Third Amended Small Business Debtor's Combined Plan of Reorganization and Disclosure Statement* ("Third Amended Plan & Disclosure Statement") (Docket No. 121), and in support of the Objection, respectfully represents as follows:

## BACKGROUND

1. On August 23, 2017 ("Petition Date"), Successful Asset Management, LLC ("Debtor"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  *See* Docket No. 1.  This is a small business case.

2. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On Schedule A/B, the Debtor disclosed its interest in 45 pieces of real property. *See* Docket No. 1. The Debtor did not disclose any other interest in real or personal property. *See id*.

4. On Schedule D, as originally filed and as amended, the Debtor identified Queen Equities, LLC as a secured creditor with a blanket lien on all of the real property and a claim in the amount of $750,000. *See* Docket Nos. 1 and 48. The date the debt was incurred is disclosed as November 15, 2016. *See* Docket Nos. 1 and 48.

5. On February 22, 2018, the Court entered an *Order Converting Case to Chapter 7*. *See* Docket No. 31.

6. On February 27, 2018, Barry R. Sharer was appointed the chapter 7 trustee. *See* Docket No. 34.

7. On February 28, 2018, the Debtor, through then proposed substitute counsel, filed a *Motion for Order (i) Granting Reconsideration of Order Converting Case Pursuant to Federal Rule 59(e) or, in the Alternative, Recovering Chapter 7 Case to Chapter 11 Pursuant to 11 U.S.C. § 706; and (ii) Allowing Debtor's Monthly Association fees to be Held in Escrow Pending Audit of Management Company* ("Motion to Reconsider"). *See* Docket No. 40.

*8.* On March 8, 2018, the Debtor filed Amended Schedules. *See* Docket No. 48. This includes an amended Statement of Financial Affairs. *See id*. In response to Part 1, Item 4 "payment or other transfers of property made within 1 year before filing this case that benefited any insider," the Debtor discloses eight transactions: (i) the transfer of 26 E Crystal Lake Ave, Haddon, NJ to 26 E Crystal LLC, an entity "owned by relative of debtor's principal" on July 19,

2

2017, total value $135,000; (ii) the transfer of 35 Old Main Shore Barnegat, NJ to 35 Old Main Shore LLC, an entity "owned by relative of debtor's principal" on June 1, 2017, total value $207,000; (iii) the transfer of 1095 Voorhees Ave., Hillside, NJ to 1095 Voorhees LLC, an entity "owned by relative of debtor's principal" on July 10, 2017, total value $137,500; (iv) the transfer of 3502 Arborwood, Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on July 19, 2017, total value $34,100; (v) the transfer of 2608 Arborwood, Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on May 8, 2017, total value $14,000; (vi) the transfer of 1710 Arborwood, Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on July 12, 2017, total value $14,000; (vii) the transfer of 2915 Arborwood, Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on July 12, 2017, total value $22,000; and (viii) the transfer of 2411 Lindenwold, NJ to the Debtor from "a relative of debtor's principal" on July 12, 2017, total value $14,000.  *See id.*

9. On March 28, 2018, the Court entered an *Order Converting Chapter 7 Case to Chapter 11 Pursuant to 11 U.S.C. § 706*.  *See* Docket No. 57.

10. On May 4, 2018, the Debtor filed the *First Amended Small Business Debtor's Combined Plan of Reorganization and Disclosure Statement*.  *See* Docket No. 73.

11. On May 23, 2018, the U.S. Trustee filed an *Objection to the First Amended Small Business Debtor's Combined Plan of Reorganization and Disclosure Statement*.  *See* Docket No. 83.

12. On July 11, 2018, the Debtor filed the *Second Amended Small Business Debtor's Combined Plan of Reorganization and Disclosure Statement*.  *See* Docket No. 97.

13. On August 28, 2018, the Debtor filed a letter with the Court stating, in part, that there was "an extremely extraordinary circumstance that has just been revealed to the Debtor.  The

Debtor has been informed that condemnation of its units is taking place . . . Under these new-found circumstances, the Debtor will not have income from its units to fund a Plan of Reorganization . . . the Debtor intends to file a Third Amended Plan . . . based on the price offered in the condemnation proceedings." *See* Docket No. 106.

14. On August 31, 2018, the Debtor filed a *Reply to Objection of Arborwood Condominium Association, Inc., Arborwood II Condominium Association, Inc. and Arborwood III Condominium Association, Inc. to Debtor's Second Amended Combined Chapter 11 Plan and Disclosure Statement*. See Docket No. 107. In the Reply, the Debtor explains certain properties transferred out of the Debtor pre-petition have been transferred back to the Debtor post-petition. *See id*. This appears to be a significant event in the bankruptcy, but is not disclosed in Section 1.8.

15. On September 20, 2018, the Debtor filed the Third Amended Plan & Disclosure Statement, which is the subject of this Objection. *See* Docket No. 117.

16. The Third Amended Plan & Disclosure Statement provides, in relevant part, that: (A) the Plan is a reorganization; (B) the Debtor will fund the plan from rental income and new value contributions from its sole shareholder; (C) the Debtor "does not intend to pursue preference, fraudulent conveyance, or other avoidance actions"; (D) unsecured creditors are impaired and will receive "3% dividend," with payments beginning on the on the 37th month from the Effective Date through the 60th month of the plan; and (E) the equity interest holder (Kevin Gestetner) is unimpaired and will retain his "100% equity." *See* Docket No. 117.

17. The Third Amended Plan & Disclosure Statement, in Section 1.8, describes a "possible condemnation that would affect its units." *See* Docket No. 117.

18. In Section 2.5, Means for Implementation of the Plan, the Debtor states it "will fund the Plan from rental income and new value contributions from its sole shareholder." *See id*. The

4

Debtor does not include any further information regarding the effect of condemnation in the Plan itself. It appears the only further reference to the condemnation is Exhibit D, Plan Projections. *See* Docket No. 117, Exhibit D.

19. Article 5, Discharge, does not include a reference to Section 1141(d)(6)(B). *See* Docket No. 117, Article 5.

## LEGAL ANALYSIS

20. Pursuant to 11 U.S.C. § 586, the U.S. Trustee is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*), 33 F.2d 294, 295-96 (3d Cir. 1994) (nothing that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

**Adequacy of the Disclosure Statement**

21. Pursuant to Section 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" to allow parties to make an informed judgment about a plan of reorganization or liquidation. Section 1125(a)(1) defines "adequate information" as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information

5

>   about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

See 11 U.S.C. § 1125.

22. Full disclosure is a fundamental policy in the reorganization process. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1980), *cert. denied*, 109 S. Ct. 495 (1988) ("[W]e cannot overemphasize the Debtor's obligation to provide sufficient data to satisfy the code standard of 'adequate information.'"); s*ee also In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990) ("Given the necessity for adequate information in the Disclosure Statement and the paramount position Section 1125 occupies in the Chapter 11 process, there is little, if any, room for harmless error.").

23. When assessed against the standards outlined above, the Third Amended Plan & Disclosure Statement is inadequate because the information provided is not clear or complete enough for a hypothetical investor to make an informed judgment about the proposed plan and, at times, is contradictory.

24. As set forth above, the Third Amended Plan & Disclosure Statement provides the plan will be funded from future rental income and contributions from the sole shareholder. There is little discussion of the effect of condemnation, other than in footnotes to the Plan Projections at Exhibit D. Clearly, the changed circumstances of the possible condemnation completely change the means of implementing the plan and also have a lot of unknown variables, including the timing and the amount. An explanation should be prominent in the plan, and not just footnoted information in the Plan Projections.

25. There is also not enough information regarding the ability or commitment of Gestetner to make a $20,000 contribution. Also, in Sections 1.6 and 2.5, the Debtor states the payment from Gestetner will be made on the Effective Date, but Exhibit B, Cash on Hand on the Effective Date, shows "$0" in "Capital Contributions."

26. Accordingly, the information provided is not adequate.

**Confirmation of the Plan**

27. Confirmation of a chapter 11 plan requires that the Debtor meet all the requirements of Section 1129(a). *See Matter of Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000).

**A. Feasibility – 11 U.S.C. § 1129(a)(11)**

28. Section 1129(a)(11) requires a debtor to demonstrate the plan is feasible. *See generally*, 11 U.S.C. § 1129(a)(11). The standard of proof required by a debtor to prove a chapter 11 plan's feasibility is by a preponderance of the evidence. *See In re Rubicon US REIT, Inc.*, 434 B.R. 168, 174 (Bankr. D. Del. 2010); *In re Trans Max Tech., Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006). The debtor must present evidence to sufficiently demonstrate that a plan has a reasonable chance of succeeding. *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226. The debtor has to establish concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under a proposed plan. *See Trans Max Tech., Inc.*, 349 B.R. at 92.

29. In addition, the Court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success. *See Greate Bay Hotel & Casino, Inc.,* 251 B.R. at 226.

30. "The purpose of § 1129(a)(11) 'is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the debtor

7

could possibly attain after confirmation.'" *See In re Sound Radio, Inc.*, 103 B.R. 521, 522 (D.N.J. 1989), *aff'd sub nom Appeal of Robinson*, 908 F.2d 964 (3d Cir. 1990) (citation omitted).

31. The facts and circumstances of this case demonstrate that the proposed plan is not feasible on its face and, as a result, may fail to qualify for confirmation.

32. Payments to non-priority general unsecured creditors are scheduled to commence 37 months after the Effective Date through the 60th month of the Plan. As a general matter, it is difficult to evaluate the likelihood of any distribution to unsecured creditors where the first payment is not scheduled for more than three years.

33. As the Third Amended Plan & Disclosure Statement does not comply with Section 1129(a)(11), confirmation should be denied.

**B. Best Interest Test – 11 U.S.C. § 1129(a)(7)**

34. Section 1129(a)(7) requires that each impaired class of claims receives as much as it would under a chapter 7 liquidation. To satisfy this test, the Debtor must provide a liquidation analysis. Here, although the Debtor provided a liquidation analysis, it does not take into account any potential avoidance actions that the Debtor, or a trustee, may be able to commence on behalf of the estate. This is relevant in light of the information in the amended Statement of Financial affairs disclosing the transfer of real property to potential insiders in the one year prior to the Petition Date as well as the lack of information for any value received from Queen Equities, LLC.

35. As the Third Amended Plan & Disclosure Statement does not comply with Section 1129(a)(7), confirmation should be denied.

### C. Absolute Priority Rule – 11 U.S.C. § 1129(a)(8)

36. Section 1129(a)(8) requires that each class of claims either be unimpaired or vote[1] to accept the plan. Section 1129(b)(1) provides an exception to Section 1129(a)(8) if the plan does not discriminate unfairly, is fair and equitable and meets all other requirements under Section 1129(a). Fair and equitable is defined by Section 1129(b)(2), including that no junior interest can receive property until all senior interests are paid in full. 11 U.S.C. § 1129(b)(2)(B)(ii). These connected statutory provisions are commonly referred to as "the absolute priority rule." *See In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511-12 (3d Cir. 2005). Under this rule, "a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1998), *quoting In re Ahlers*, 794 F. 2d 388, 401 (8th Cir. 1986).

37. There is an exception to the absolute priority rule called "the new value exception," which "allows existing equity holders to retain (i.e., buy back) their ownership interests in the reorganized debtor over the objection of any senior dissenting unsecured creditor class that is not being paid in full if the equity holders make a new capital contribution to the debtor that meets certain criteria." *In re Haskell Dawes, Inc.*, 199 B.R. 867, 871 (Bankr. E.D. Pa. 1996).

38. The criteria requires a capital contribution that is: (1) "in the form of money or money's worth"; (2) "necessary to the reorganization"; (3) "reasonably equivalent to the value of the interest being retained"; (4) up front"; and (5) "substantial." *Haskell Dawes*, 199 B.R. at 872 (citations omitted). The plan proponent has the burden of proof. *Id*. Further, "'[a] rigorous showing as to these requirements is necessary in order to ensure that a debtor's equity holders do

---

[1] There is no voting information available at this time.

not eviscerate the absolute priority rule by means of contrived infusion.'" *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 301 (D.N.J. 1996), *quoting In re Tallahassee Assocs., L.P.* 132 B.R. 712, 717 (Bankr. W.D. Pa. 1991).

39. The Third Amended Plan & Disclosure Statement indicates non-priority general unsecured creditors will only receive a 3% dividend and that Kevin Gestetner is not impaired and will retain 100% equity.

40. Arguably, the Debtor would satisfy the first criteria as the contribution is in the form of money. The Debtor also, arguably, would satisfy the second criteria as it does not appear that rental income (and/or funds received from the condemnation) alone can fund the plan. As to the third, fourth and fifth criteria – that the contribution be reasonably equivalent to the value of the interest being retained, upfront[2], and substantial – there is simply not enough information provided by the Debtor to consider these elements.

41. There is also no proof of Gestetner's ability or commitment to make these payments.

42. To the extent creditors do not vote to accept the plan, Third Amended Plan and Disclosure Statement violates the absolute priority rule, and does not satisfy the new value exception, confirmation should be denied.

## CONCLUSION

WHEREFORE, it is respectfully submitted that the Court disapprove the Third Amended Plan & Disclosure Statement and grant such other relief as the Court deems just and proper.

Respectfully submitted,

ANDREW R. VARA

---

[2] While certain provisions in the Third Amended Plan & Disclosure Statement indicate Gestetner will make the payment on the Effective Date, this information is not included on Exhibit B, Cash on Hand on the Effective Date, where it states "$0" in "Capital Contributions."

                            ACTING UNITED STATES TRUSTEE
                            REGION 3

                By:    */s/ Lauren Bielskie*
                            Lauren Bielskie
                            Trial Attorney

Dated: October 11, 2018